STATE OF NORTH CAROLINA v. PAMELA JEAN McCRACKEN

No. COA02-958

(Filed 6 May 2003)

**1. Drugs— trafficking—oxycodone in tablet form—weight**

The tablet form of oxycodone was properly considered a mixture for purposes of a trafficking charge under N.C.G.S. § 90-95(h)(4). The word "mixture" refers to the total weight of the dosage unit rather than the actual weight of the controlled substance within the mixture under *State v. Jones*, 85 N.C. App. 56. The statutory language "or any mixture containing such substance" presents a catch-all provision and does not lead to the conclusion that the legislature did not intend to include tablets within the definition of "mixture."

**2. Drugs— trafficking in oxycodone tablets—weight—no evidence of lesser offense**

The trial court's failure to charge on the lesser-included offense of simple sale and possession of oxycodone in a prosecution for trafficking was not error. The weight to use when the controlled substance was in tablets was a question of law, and there was no evidence from which the court could have fashioned an instruction to a lesser offense.

**3. Evidence— similar drug transactions—not remote in time—admissible**

There was no abuse of discretion in the admission of other drug transactions in a prosecution for trafficking in oxycodone. The other transactions involved the sale of oxycodone at pre-arranged locations similar to the location at issue here and occurred within a few weeks of this transaction. The evidence was more probative than prejudicial.

On writ of certiorari to review judgments dated 12 September 2001 by Judge Ronald K. Payne in Haywood County Superior Court. Heard in the Court of Appeals 26 March 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General E. Burke Haywood, for the State.*

*Staples Hughes Appellate Defender by Assistant Appellate Defender Constance E. Widenhouse, for defendant appellant.*

BRYANT, Judge.

Pamela Jean McCracken (defendant) petitions this Court to review upon writ of certiorari (A) judgments dated 12 September 2001 entered consistent with a jury verdict finding her guilty of (1) maintaining a vehicle to keep and sell a controlled substance (01 CRS 4297), (2) trafficking by possession of oxycodone, (3) trafficking by sale of oxycodone, and (4) trafficking by transportation of oxycodone (01 CRS 4294) and (B) a judgment dated 12 September 2001 entered consistent with defendant's no contest plea to two counts of trafficking by sale of oxycodone (01 CRS 4293/4295).[1]

On 20 June 2001, the respective trafficking indictments were issued and charged defendant with trafficking in "a mixture containing oxycodone weighing 4 grams or more but less than 14 grams" on 5 March 2001. The evidence at trial revealed defendant met Tyronne Heath, an informant for the Haywood County Sheriff's Department, at a Wal-Mart on 5 March 2001 and sold him forty tablets of the prescription drug Oxycontin. The forty tablets had a total weight of 5.4 grams, of which 1.6 grams consisted of oxycodone, a Schedule II opium derivative. Heath and another witness also testified to other occasions between 7 February and 14 March 2001, when they had met with defendant at various prearranged locations, including K-Mart,

---

1. The plea agreement reserved defendant's right to appeal the trial court's denial of her motion to dismiss the charges.

Time Out Market, Ingles, and a "Rec Park," to buy oxycodone. The trial court, over defendant's objections under Rules 404(b) and 403, admitted this testimony, finding that:

> [T]hose transactions [were] similar in kind and . . . involve[d] arrangements to meet by telephone, sale of the same matter . . . and . . . [are] admissible for [the] purpose of showing that . . . [d]efendant had knowledge[,] which is a necessary element of the crimes charged in this case. And that there existed in her mind a plan, scheme or system or design involving the . . . crimes charged . . . . She had the opportunity to commit the crime, it was absence of . . . mistake and absence of entrapment.

The jury was instructed accordingly.

The dispositive issues are whether: (I) a pharmaceutical drug dispensed in tablet form is a "mixture" within the meaning of N.C. Gen. Stat. § 90-95(h)(4); (II) the trial court erred in failing to submit to the jury the lesser-included offenses of simple sale and simple possession of oxycodone; and (III) the trial court abused its discretion under Rules 404(b) and 403 in admitting evidence of other drug transactions conducted by defendant.

I

**[1]** Defendant first argues the trial court should have allowed her motion to dismiss the trafficking charges because, of the 5.4 grams of Oxycontin sold to Heath, only 1.6 grams consisted of the controlled substance oxycodone. She contends that because the remaining ingredients in each tablet consisted of filler substances, their weight should not have counted toward the four grams or more charged in the indictment.

N.C. Gen. Stat. § 90-95(h)(4) provides that:

> Any person who sells, manufactures, delivers, transports, or possesses *four grams or more of opium or opiate*, or any salt, compound, derivative, or preparation of opium or opiate . . . *or any mixture containing such substance, shall be guilty of* a felony which felony shall be known as "*trafficking* in opium or heroin" . . . .

N.C.G.S. § 90-95(h)(4) (2001) (emphasis added). This Court has previously decided whether the statute envisions use of the total weight of a mixture or the actual weight of the controlled substance within

a mixture and held: "Clearly, the legislature's use of the word 'mixture' establishes that the total weight of the dosage units . . . is sufficient basis to charge a suspect with trafficking." *State v. Jones*, 85 N.C. App. 56, 68, 354 S.E.2d 251, 258 (1987). Acknowledging the ruling in *Jones*, defendant argues prescription medication in tablet form should be treated differently because it does not constitute a mixture within the meaning of section 90-95(h). In support of her argument, defendant points to several subsections that prohibit trafficking in a specified number of "tablets, capsules, or other dosage units" of a controlled substance "or any mixture containing such substance" depending on its quantity or weight. *See* N.C.G.S. § 90-95(h)(2), (4a)-(4b) (2001). Because these subsections list both tablets and mixtures, defendant contends the Legislature could not have intended for tablets to be included in the definition of "mixture." We disagree.

The term "mixture" is not defined by statute. When, however, the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the language its plain and definite meaning. *Utilities Comm'n v. Edmisten, Atty. General*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1977). Statutes dealing with the same subject matter must be construed *in pari materia* and harmonized, if possible, to give effect to each. *Utilities Comm'n v. Electric Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 663, 670 (1969).

A mixture is defined as "a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence." *Webster's Third New International Dictionary* 1449 (1968); *see also Ex parte Fletcher*, 718 So.2d 1132, 1134 (Ala. 1998) ("a 'mixture' consists of two or more substances blended together so that the particles of one substance are diffused among the particles of the other(s) and yet each substance retains its separate existence"). Dosage units like tablets and capsules, by their nature, contain commingled substances that are identifiable and thus regarded as retaining their separate existence. The *Jones* Court implicitly recognized this fact by treating the dosage units of Dilaudid at issue in that case, which came in tablet form, as mixtures. *See Jones*, 85 N.C. App. at 68, 354 S.E.2d at 258; *see also United States v. Young*, 992 F.2d 207, 209-10 (8th Cir. 1993) (considering a tablet to be a mixture and counting the entire tablet weight).

The statutes cited by defendant are not inconsistent with this interpretation. The terms "tablets, capsules, or other dosage units" are only used in sections in which the Legislature specified the exact

number of tablets, possession of which would amount to the felony of trafficking. N.C.G.S. § 90-95(h)(2), (4a)-(4b). In this context, the language "or any mixture containing such substance" presents a catch-all provision for any variation in form, weight, or quantity of the controlled substance and does not lead to the conclusion that the Legislature did not intend to include tablets within the definition of "mixture." We thus conclude that the trial court did not err in treating the tablets of Oxycontin in this case as mixtures and applying the holding in *Jones*. Accordingly, defendant's motion to dismiss was properly denied.

II

**[2]** Defendant next argues the trial court erred in failing to instruct the jury on the lesser-included offenses of simple sale and simple possession of oxycodone because, at the very least, the question of which weight to apply was a question of fact for the jury and, if the jury decided to use the controlled substance weight as opposed to the total tablet weight, the lesser-included offenses would have been warranted. This contention is without merit. As the above analysis illustrates, the question of which weight to apply is a legal one. *See Jones*, 85 N.C. App. at 68, 354 S.E.2d at 258. Pursuant to *Jones*, the jury was to consider the total weight of the tablets, which was 5.4 grams and thus within the parameters in which defendant could be found guilty of trafficking in oxycodone. *See State v. Willis*, 61 N.C. App. 23, 37-38, 300 S.E.2d 420, 429 (instruction on lesser-included offenses not warranted where the total weight of the mixture exceeded the lower weight limit even though only thirty percent of the mixture was pure heroin), *modified on other grounds and aff'd*, 309 N.C. 451, 306 S.E.2d 779 (1983). Accordingly, there was no evidence presented in this case from which the trial court could have legitimately fashioned a charge for a lesser offense. *See id.*

III

**[3]** Finally, defendant contends the trial court abused its discretion under Rules 404(b) and 403 in admitting evidence of other drug transactions conducted by defendant.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (2001). Evidence admissible under Rule 404(b) is also subject to the balancing test of Rule 403, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, . . . or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (2001).

The transcript reflects that evidence of additional drug transactions between 7 February and 14 March 2001 was offered and admitted for the purpose of establishing knowledge, plan, scheme, or design, opportunity, and absence of mistake or entrapment, proper purposes under Rule 404(b). *See* N.C.G.S. § 8C-1, Rule 404(b); *State v. Rosier*, 322 N.C. 826, 829, 370 S.E.2d 359, 361 (1988) (evidence of other offenses showing common scheme or plan to commit the offense with which defendant was charged held relevant and admissible pursuant to Rule 404(b)). "When incidents are offered for a proper purpose, the ultimate test of admissibility is whether they are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of Rule 403 of the N.C. Rules of Evidence." *State v. Richardson*, 100 N.C. App. 240, 244, 395 S.E.2d 143, 146 (1990); *see also State v. Coffey*, 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990) (because "[e]vidence which is probative of the State's case [is] necessarily . . . prejudicial" to the defendant, "the question is one of degree").

In this case, the other drug transactions involved the sale of oxycodone at prearranged locations similar to the location at which defendant had met Heath on March 5. These other transactions also occurred within a few weeks before and after that date. As such, they were sufficiently similar and not too remote in time, *see, e.g., Richardson*, 100 N.C. App. at 245, 395 S.E.2d at 146 (remoteness not an issue since all of the events took place within a ten-month period), so as to make the evidence more probative than prejudicial. Thus, the trial court did not abuse its discretion in admitting the evidence.

No error.

Judges TIMMONS-GOODSON and GEER concur.