MOORE, Chief Justice
(dissenting).
Gary Paul Schreiner was convicted of trafficking in more than 28, but less than 500, grams of methamphetamine. § 13A-12-231(ll)a., Ala.Code 1975. He was sentenced as a habitual offender to life imprisonment. See §§ 13A-5-9 and 13A-12-231(13), Ala.Code 1975:[1] The Court of Criminal Appeals affirmed Schreiner’s conviction and sentence. Schreiner v. State, 196 So.3d 1237 (Ala.Crim.App.2015). Having initially granted Schreiner’s petition for a writ of certiorari, .this Court now quashes the writ.[2] , Because, in my view, the statute setting out the offense of trafficking in .methamphetamine is ambiguous as to the meaning of the word “mixture,” and thus subject to the rule of lenity, I would reverse Schreiner’s conviction and sentence. . .
On June 14, 2012, Joseph Goff, a corporal with the City of Mobile Police Depart- *1248 raent, served' an arrest warrant on Schreiner at a mobile home in Satsuma, a town about 15 miles north of Mobile. Shirtless and without shoes when Cpl. , Goff arrived, Schreiner asked Cpl. Goff to “grab him a pair of tennis shoes” and directed him to a pair of shoes. Inside one shoe Cpl, Goff discovered three bags of what appeared to be methamphetamine. Iiiside the other shoe he found a digital scale. Cpl. Goff summoned Raylerie Busby and Greg-' O’Shea, deputies with the Mobile County narcotics unit, to the mobile home. After obtaining a search warrant, they searched the mobile home and found, among other items commonly used in the manufacture of methamphetamine, a jar of “meth oil,” a toxic liquid that is an intermediate stage in the process of manufacturing methamphetamine.
The Alabama' Department of Forensic Sciences determined that the granular substance founds in Schreiner’s tennis shoe weighed 1.439 grams and tested positive for methamphetamine and pseudoephed-rine, a decongestant commonly used in manufacturing methamphetamine. The meth oil tested positive for the same ingredients and weighed 151.91 grams.
"Based on the weight of the meth oil, Schreiner was ’"indicted for trafficking in methamphetamine. The relevant statute states: “Any "person ... who is knowingly in actual or constructive possession of, 28 grams or more of methamphetamine or any mixture ■ containing methamphetamine ... 'is guilty of a felony, which felony shall be known as ‘trafficking ■'in methamphetamine.’” §' 13A-12-231(ll)a. (emphasis added). Deputy Busby testified that the oil found in the mobile home tested positive for methamphetamine'but that the amount of methamphetamine in relation to the amount of 'pseudoephedrine, a legal substance, in the mixture was unknown. She also testified that as little as one-tenth of one gram of methamphetamine in a cup of water, would cause the liquid in the cup to test positive for methamphetamine and would support a trafficking charge. By contrast, she stated,, a person in possession of that same tenth of a gram of methamphetamine in granular form would be charged with only possession of methamphetamine.
Schreiner moved for a judgment of acquittal on the ground that the meth oil discovered in the mobile home was not “28 grams or more of ... any mixture containing methamphetamine” as required by § 13A-12-231(ll)a. Schreiner argued that in using the word “mixture” in the statute the legislature intended to refer to either “an actual finished final product of methamphetamine, or methamphetamine in the granular state.” To interpret the statute otherwise, Schreiner argued, would cause a person to be guilty of trafficking in methamphetamine if the person merely added a minute amount of methamphetamine to a large amount of liquid. The circuit court denied Schreiner’s motion for a judgment of acquittal.
The federal courts, interpreting a federal statute analogous to § 13A-12-231(ll)a., are split over whether the term “mixture” as used in the statute includes only usable or marketable mixtures as opposed to waste products that contain trace amounts of a controlled substance or intermediate products such as meth oil, which are not marketable without further processing. For a synopsis of this split in opinion, see Sewell v. United States, 507 U.S. 953, 113 S.Ct. 1367, 122 L.Ed.2d 745 (1993) (White and Blackmun, JJ., dissenting from denial of certiorari). This Court has held that “all legal substances that are contained in a ‘mixture’ should be weighed along with the illegal drug contained therein.” Ex parte Fletcher, 718 So.2d 1132, 1135 (Ala.1998).
*1249 I find it unnecessary to address the argument that the term “mixture” is limited to usable- mixtures because in my view an ambiguity exists in the statute that should control the result. The statute states that, “possession of 28 grams or more of methamphetamine or any mixture containing methamphetamine” is a felony. In my view the term “any mixture containing methamphetamine” in the context of the statute is susceptible to two meanings. It may mean “possession, of 28 grams or more of methamphetamine or any mixture containing [any amount of] methamphetamine.” But it may also reasonably be read to mean “possession of 28 grams or more of methamphetamine or any mixture containing [at least 28 grams of] methamphetamine.” The latter interpretation requires that the minimum weight of the actual banned substance be present, whether in pure form or mixed with other legal substances. Such an interpretation is more faithful to the overall sentencing scheme, which graduates the penalty as the quantity of methamphetamine increases. See '§ 13A-12~231(ll)a.~d., Ala.Code 1975.
Under the rule of lenity, “an ambiguous criminal statute is to be' construed in favor of the accused.” Staples v. United States, 511 U.S. 600, 619 n. 17, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). See also Ex parte Hyde, 778 So.2d 237, 239 (Ala.2000) (noting “the fundamental rule that criminal statutes are construed strictly against the State”). I would reverse the judgment of the Court of Criminal Appeals on the ground that Schreiner is entitled to the benefit of the rule of lenity in the court’s interpretation of the methamphetamine-trafficking statute.

, Schreiner was also fined $50,000, as required by the statute. § 13A-12-231(ll)a., Ala.Code 1975.

. Like the denial of a petition for a writ of certiorari, the quashing of a writ of certiorari, although leaving the original affirmance in effect, State v. HealthSouth Corp., 121 So.3d 334, 334 (Ala.Civ.App.2013), constitutes no expression of approval on the merits of the opinion' of thé lówér appellate court. Ex parte Jenkins, 723 So.2d 649, 658 n. 13 (Ala.1998).