In a prior Opinion and Award, filed November 20, 1990 by Deputy Commissioner Jan Pittman, plaintiff was found to be totally disabled. The sole issue on appeal is whether plaintiff is entitled to a replacement prosthesis. The Deputy Commissioner was correct that, to the extent the reference to "original artificial members" in N.C.G.S. § 97-25 (transferred to § 97-2(19) when the Legislature created a combined, consistent definition of "medical compensation" for Sections 10.2, 25, 29, 59, and 90 in 1991) was a limit on the number of prostheses necessary due to the compensable injury for which the defendant could be required to pay, it was transformed by context upon the passage of the 1973 amendment to this section, as read inLittle v. Penn Ventilator, making medical assistance that gave "relief" available to a claimant under all compensable circumstances. 317 N.C. 206, 213, 345 S.E.2d 204 (1986).
In any case, as defendants acknowledge, the amendment to the medical compensation definition in the Workers' Compensation Reform Act of 1994 — adding to the pre-existing language, "and the replacement of such artificial members when reasonably necessitated by ordinary use or medical circumstances" — was "effective upon ratification [on July 5, 1994] and applies to claims pending on or filed after the date of ratification", including this one. Defendants argue that this is an unconstitutional retroactive creation of a new remedy for a liability which had accrued at the time the amendment took effect (citing Fogleman v. DJ Equipment Rental, 111 N.C. App. 228,431 S.E.2d 849 (1993)), as opposed to a statute that "merely . . . operates on facts which were in existence prior to its enactment." Booker v. Duke University Medical Center, 297 N.C. 458,466-67, 256 S.E.2d 189. If defendants are correct that the pre-1994 statute limited their liability to a single original prosthesis, this constitutional question may turn on whether "the liability" here is perceived to have accrued when plaintiff lost his leg, or when the old prosthesis failed, or when the necessity for a new one is proven. However, that is a decision for the Courts, since the Commission, in its compensation jurisdiction, as a part of the executive branch of government, may not determine the constitutionality of the Legislature's enactments. UtilitiesCommission v. Carolina Utility Customer's Association, Inc.,336 N.C. 657, 674, 446 S.E.2d 332 (1994); Cox v. Kinston, 217 N.C. 391,395, 6 S.E.2d 252 (1940); but see Heavner v. Town ofLincolnton, 2 I.C. 213 (1931), aff'd, 202 N.C. 400, 162 S.E. 909
(1932), appeal dismissed, 287 U.S. 672, 53 S.Ct. 4, 77 L.Ed. 579
(1932); N.C.G.S. § 97-91. (When "constituted a court" for the purpose of hearing State Tort Claims Act cases, the Commission apparently does have this duty in cases of first impression, like all trial courts. N.C.G.S. § 143-29; Oxendine v. Dept. ofCorrections, I.C. No. TA-12513, 16 Dec. 1992.) However, as noted initially, the Courts' interpretation of the statute as it has existed since 1973 is dispositive.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS from the Opinion and Award of the Deputy Commissioner the following
FINDINGS OF FACT
1. Plaintiff sustained a compensable injury on March 12, 1987, in which his left leg was amputated by an auger. As a result of the injury, plaintiff has undergone two (2) surgical amputations and three (3) stump revisions. Due to the changes following these procedures, plaintiff has had to have three (3) different prosthetic devices.
2. Plaintiff has continued to experience some pain in the stump to the end of the left leg. The current prosthetic device does not wear well and is difficult to bend. As a result of problems with the prosthesis, plaintiff went to Eddie White with Hanger Prosthetics to see about getting the device repaired.
3. By March of 1989, plaintiff had completed his last fitting and the prosthesis was completed. However, Mr. White continued to work with adjustments and repairs.
4. Mr. White testified that a prosthetic device normally lasts about five (5) years. An examination of plaintiff's device revealed cracking and splitting at the socket.
5. Plaintiff's device is an above-the-knee type. This device is composed of a socket (where the stump fits), a knee unit, and a foot unit.
6. Hanger Prosthetics was asked to fill a prescription for a new, left, above-the-knee prosthesis in August 1991 due to significant change in shape of the residual limb which has resulted in poor fit, irritation of the stump, and pistoning of the prosthesis.
The following were prescribed at that time:
L5320 — Endoskeletal Above Knee Prosthesis
L5649 — Ischial Containment Socket
L5613 — OHC 4-Bar Linkage With Hydraulic Unit
L5976 — Seattle Foot
7. On June 9, 1992, plaintiff was seen at the Amputee Clinic at Nash Day Hospital, where a new prosthesis was prescribed.
8. On March 9, 1993, progress notes indicated that plaintiff presented at the clinic with complaints of pain in the left distal stump. The stump appeared reddish/bluish on the medial and central distal femur with hardening of tissue. Notes indicate this condition "is characteristically caused by a socket that does not fit properly," and that "the upper socket is too small and the lower is too large creating a vacuuming effect to the distal stump. The symptoms we are presently seeing will only increase in severity so it is imperative that he be measured for a new AK prosthesis before any permanent damage occurs.
9. Defendants have refused to provide a new prosthesis for the plaintiff.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff is entitled to have defendants provide such medical compensation as may be necessary to effect a cure, provide relief, or lessen his period of disability. N.C.G.S. § 97-25; N.C.G.S. § 97-2(19). Plaintiff is therefore entitled to ongoing medical compensation; including the provision of future prosthetic devices, pursuant to Hyler v. GTE Products,333 N.C. 258, 425 S.E.2d 698 (1993).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay medical expenses incurred or to be incurred by the plaintiff as a result of the compensable injury, including such prosthetic devices as may be necessary to provide relief or lessen his period of disability.
2. Defendants shall bear the costs.
 S/ ________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ________________________ J. HOWARD BUNN CHAIRMAN
S/ ________________________ ROGER DILLARD DEPUTY COMMISSIONER
JRW/RCH/tmd 2/13/95